## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

In re

**MARK AARON BENNETT**,

Debtor.

Case No. **17-60065-13**

## MEMORANDUM OF DECISION

## I. INTRODUCTION

At Butte in said District this 18th day of May, 2017.

In this Chapter 13 case the hearing on confirmation of Debtor's First Amended Plan dated April 11, 2017 ("Amended Plan") (Docket No. 37) was held on May 5, 2017. The Chapter 13 Standing Trustee Robert G. Drummond filed objections to confirmation and appeared and requested that confirmation be denied because the Amended Plan is not feasible and that the case be dismissed because neither the petition nor the Amended Plan were filed in good faith as required under 11 U.S.C. § 1325(a)(3) and (7).

The Debtor Mark Aaron Bennett ("Bennett" or "Debtor") appeared and testified, represented by attorney Jon R. Binney of Missoula. Megan Michnevich ("Michnevich") also testified. Exhibits ("Ex.") A, B, C, and 1 – through – 14 were admitted into evidence by stipulation. At the conclusion of the parties' cases-in-chief the Court took the matter under advisement.

After review of the Debtors' Amended Plan, the Trustee's objection, the record and applicable law, this Court concludes that the Amended Plan does not fulfill the confirmation requirements of § 1325(a) because it fails to pay a domestic support obligation to Debtor's former spouse in full during the term of the Amended Plan. The Court further concludes that,

1

while the Trustee offered credible evidence of bad faith by the Debtor under the applicable Ninth Circuit test, dismissal of this case at this time does not serve the best interests of the creditors and the estate.  As a result, the Trustee's request for dismissal on grounds of bad faith will be denied without prejudice with leave to refile, should Debtor fail to cooperate and fulfill his ongoing obligations under the Code, including proposing a confirmable plan.  The evidence of bad faith admitted at the hearing on May 5, 2017, will be part of the record in any future hearing in this case on any subsequent motion to dismiss filed by the Chapter 13 Trustee or other party in interest.

## II.  JURISDICTION

This Court has exclusive jurisdiction of this Chapter 13 bankruptcy under 28 U.S.C. § 1334(a).  Confirmation of Debtor's Amended Plan and the Chapter 13 Trustee's request to dismiss for bad faith are core proceedings under 28 U.S.C. § 157(b)(2).  This Memorandum includes the Court's findings of fact and conclusions of law.

## III.  FACTS

### A.  Debtor's former spouse is the largest creditor in the case.

Mona Bennett ("Mona") is Debtor's former spouse and a judgment creditor.  Mona was awarded maintenance in connection with a divorce proceeding and this award is reflected in an order dated December 4, 2013 and judgment entered on January 24, 2014.  Along with past due amounts due under the judgment, Debtor has an ongoing obligation to pay Mona $500 per month.  Mona's proof of claim includes an invoice reflecting she sought a writ of execution in connection with enforcing her judgment.  These execution efforts were not successful, and Debtor was the subject of contempt proceedings, and subject to being incarcerated for contempt immediately prior to filing his petition.  Based on her judgment, Mona filed Proof of Claim No. 3

asserting a priority claim, as a domestic support obligation under 11 U.S.C. § 507(a)(1), in the amount of $37,926.33.

Debtor is employed as an auto mechanic by Bennett's Auto Repair, LLC (his "LLC") in Missoula. Debtor is the sole member of the LLC. He testified that he formed the LLC in 2012 in part, to protect his tools from seizure in any lawsuit.[1] Following Debtor's divorce from Mona he remarried. According to Debtor, his new spouse pays for their living expenses, including a $500 monthly mortgage on their mobile home, and he pays no household expenses, except as follows: gasoline for the truck owned by his wife but utilized by him; $475 for the lot rental for the mobile home; and, some of their personal utilities and their phone bill.

Prior to filing bankruptcy, any personal expenses Debtor paid, he paid with funds from the LLC's account. He testified that his LLC has a business account, from which he writes checks to pay his personal expenses. He did not have a personal bank account prior to filing bankruptcy. He established an individual account only after he filed his bankruptcy petition in order to make plan payments to the Trustee. Debtor's isolation of his income and tools in the LLC pre-petition, likely contributed to Mona's failed execution efforts.

### B. Inconsistencies and Omissions in Debtor's Schedules.

Debtor commenced the instant Chapter 13 bankruptcy by filing a voluntary Chapter 13 petition on January 31, 2017, with Schedules and a Statement of Financial Affairs ("SOFA").[2] Debtor performs vehicle repairs for Bitterroot Welding & Hydraulics ("Bitterroot Welding"). Michnevich is Bitterroot Welding's office manager. She testified that Bitterroot Welding made a

---

[1] Debtor has one set of tools and although he contended in his testimony that the tools are owned by the LLC, the record does not support this testimony. Specifically, at least with regard to certain tools, Debtor acquired those tools with credit from Snap-On Credit LLC. The credit was extended to Bennett, not the LLC (*See* Proof of Claim 2), and the record is devoid of any bill of sale or other indicia of transfer from Debtor to the LLC.

[2] This is Debtor's second bankruptcy filing. Along with his former spouse Mona Bennett ("Mona") Debtor filed a joint Chapter 7 bankruptcy petition in 2001 in Case No. 01-33556-7, and received a discharge.

personal loan to Debtor in the amount of $18,000 cash in 2010, payable by means of Bennett's labor repairing Bitterroot Welding's vehicles. As of the petition date the balance owed on the Bitterroot Loan was about $6,000 (the "Bitterroot Debt"). In addition, in order to pay his bankruptcy attorney, Debtor borrowed another $2,000 from Bitterroot Welding. Neither the $2,000 nor the Bitterroot Debt were disclosed in Debtor's initial schedules, and Bitterroot Welding is not identified as a creditor.

According to Debtor's testimony, he considered Bitterroot Welding a business creditor and he added the $2,000 which he borrowed from Bitterroot Welding to pay for his personal bankruptcy case to the balance he owed on the original Bitterroot Debt. As a result, he did not disclose it because he considered those debts to be business debts, not consumer debts, and this is a "consumer" bankruptcy.[3]

The Trustee's examination of Debtor at the hearing highlighted other problems with Debtor's Schedules. The initial Schedules reflect that Debtor has no household goods, furniture, electronics, sports equipment or hobbies. He testified that he listed nothing for those categories because all of the furniture and electronics in his home are owned by his current spouse.[4] Debtor's initial Schedules omitted a coin or knife collection. Schedules A and B require a debtor to list machinery, fixtures, equipment, supplies used in business, and tools of the debtor's trade. Debtor disclosed a Versus Pro Diagnostic Scanner with a value of $4,000. However, Debtor did not disclose any other tools on his schedules. Approximately 4 months prior to filing his petition and schedules, Debtor completed a consumer loan application with First Security Bank of

---

[3] Debtor explained many of the errors on his schedules this way. Although the Court was initially dismissive of this explanation, at one point it became clear that Debtor had provided a list of tools to his counsel, but the information was not provided to the Trustee, causing the Court to question the communication between Debtor and his counsel. Debtor's testimony if taken as true suggests he may not have fully understood some of the implications of his chapter 13 filing.

[4] The Court considered this testimony less than credible.

Missoula and included tools and equipment with a value of $80,000.

Debtor testified that he did not list his tools because he believes his LLC owns them. This testimony was irreconcilable with the representation made to First Security Bank of Missoula just 4 months earlier. Along with these inconsistencies, the Trustee questioned Debtor about other irregularities in his schedules involving his disclosure and calculation of household income, which was incorrectly calculated and failed to list his spouse's SNAP benefits at item 8f with her social security.

Debtor signed declarations stating under penalty of perjury that he read the Schedules and SOFA, and that to the best of his knowledge and belief they were true and correct. At the hearing Debtor testified that he thought that his petition and Schedules were complete and accurate when he signed them, but he admitted that that his Schedules and SOFA were not true and were incorrect in several instances raised in the Trustee's examination.

### C. Inconsistencies and Omissions associated with Mont. LBF 33, "Materials Required to be Delivered to the Trustee Prior to the 341(a) Meetings of Creditors."

Prior to the 341 Meeting, the Debtor completed, reviewed, signed, and submitted to the Trustee, under penalty of perjury, Mont. LBF 33, "Materials Required to be Delivered to the Trustee Prior to the 341(a) Meetings of Creditors". Debtor marked most entries on Ex. 1 "N/A" (Not Applicable) including at item 11 ("Business Information"). Under cross examination by the Trustee Debtor testified that he did not list his LLC interests at item 11[5] because he understood that this was a personal bankruptcy not a business bankruptcy.

Per item 13 of Ex. 1, Debtor is required to list all loan applications submitted to any bank

---

[5] Item 11 on Ex. 1 requires listing "Business Information: (For any debtor who operated a business of any kind within the six year period preceding the filing of the case)."

5

or financial institution within the last two years, "for all loans that were approved or outstanding at the time of the bankruptcy filing …." Debtor answered item 13 "N/A". Although he testified that he truthfully answered item 13, Debtor completed a consumer loan application with First Security Bank on September 23, 2016. As noted above, Debtor represented in the application that his tools and equipment had a value of $80,000. In response to the Trustee's question about his valuation of the tools in the application, Debtor testified that he did not lie in the application because he thought they were worth $80,000 at the time he signed the application and only worth $4,000 when he filed his Schedules. He offered no explanation for the precipitous decline in value during the intervening 120 days.

Debtor and Bennett's Auto Repair completed a loan application with Trailwest Bank that was signed by Debtor on August 29, 2016. In this application Debtor stated that his gross monthly salary or commissions is $8,000. Following the loan application LLC obtained a loan from Trailwest Bank and Debtor executed a guaranty in connection with the loan. Debtor signed the loan documents both individually and on behalf of the LLC on August 29, 2016. Paragraph 4 of Ex. 11 states: "UNCONDITIONAL LIABILITY. I am unconditionally liable under this Guaranty, regardless of whether or not you pursue any of your remedies against the Borrower …." Debtor should have disclosed the Trailwest transaction in connection with completion of Mont. LBF 33.

### D. Debtor's pending proposed Chapter 13 Plan.

Debtor filed his Amended Plan on April 11, 2017. Debtor's Amended Plan provides for 60 monthly payments, with the first 6 payments in the sum of $100 and the next 54 monthly payments in the sum of $500, for a total of $27,600 in plan payments. Debtor testified that he believes he has the ability to pay the required plan payments. Paragraph 2(d) retains the

$34,073.11 domestic support obligation to Mona, which "shall be paid in full under this Plan …."

The Chapter 13 Trustee filed objections to confirmation of Debtor's Amended Plan on April 14, 2017, and April 27, 2017.  The Trustee repeated his objections to the Debtor's prior plan: the plan and petition were not filed in good faith; Debtor concealed assets such as a coin collection and a trailer owned by his LLC; and, he failed to list his current spouse's social security income and food stamps in his household income and Schedules.  The Trustee's supplemental objection contends that Debtor failed to list Bitterroot Welding as a creditor even though he owes it a debt, and that his omission of Bitterroot Welding from his Schedules is unreasonable discrimination prohibited by § 1322(b)(1).

### E.  Debtor's Amendments to his Schedules.

On May 1, 2017, the Debtor amended his Schedules.  On Schedule A/B Debtor added, at item 8, collectibles consisting of a coin collection valued at $50 and a knife collection valued at $100.  He testified that his father gave him the coin collection and he had forgotten about it.  At amended Schedule E/F Debtor added Bitterroot Welding as an unsecured creditor in the amount of $8,082.  The Debtor did not list Trailwest Bank as a creditor on his amended Schedules, notwithstanding the unconditional guaranty.

After the hearing, on May 5, 2017, Debtor filed amended Schedules I and J[6].  Debtor's amended Schedule I lists total household income increased to $2,537.26.  The increase is attributable to an increase in Debtor's income from operation of a business to $1,162.26[7], and addition of $357 in food stamps added to his spouse's income column.  Debtor testified that he

---

[6] Pursuant to Fed. R. Evid. 201, the Court takes judicial notice of Debtor's statements in amended Schedules I and J as adjudicative facts to the extent that they state what they state.
[7] Debtor and his attorney told the Court that his current monthly income ranges from $1,100 to $1,300.

increased the rate he charges for labor in his auto repair business. He did not attach to Schedule I the statement of business expenses called for at the instructions for item 8a. Amended Schedule J lists total household expenses of $2,317, with additions of $500 for monthly alimony and $357 in food and housekeeping supplies. The monthly net income stated at the bottom of amended Schedule J is $220.26, available for plan payments.

## IV. LEGAL STANDARDS

It is well established law in this Circuit that for a bankruptcy court to confirm a plan, "each of the requirements of section 1325 must be present and the debtor has the burden of proving that each element has been met." *Barnes v. Barnes (In re Barnes)*, 32 F.3d 405, 407 (9th Cir. 1994) (citing cases); *Drummond v. Welsh (In re Welsh)*, 465 B.R. 843, 847 (9th Cir. BAP 2012); *In re Weik*, 526 B.R. 829, 834 (Bankr. D. Mont. 2015). Section 1325(a)(1) requires confirmation of a plan if "the plan complies with the provisions of this chapter and with the other applicable provisions of this title." *Andrews v. Loheit, (In re Andrews)*, 49 F.3d 1404, 1407-08 (9th Cir. 1995). Therefore, the Debtor has the burden of proof on all elements of confirmation. *Meyer v. Hill*, *(In re Hill)*, 268 B.R. 548, 552 (9th Cir. BAP 2001).

One such requirement applicable under § 1325(a)(1) is at § 1322(a)(2) which provides that the "plan -- …(2) shall provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim[.]." Under this section, priority claims must be determined and paid in full to accomplish confirmation. *Weik*, 526 B.R. at 835, citing 1 & 2 Hon. Keith M. Lundin, *Chapter 13 Bankruptcy,* §§ 4.11, 7.28 (2nd Ed. 1994). The feasibility requirement is found at § 1325(a)(6) which provides for confirmation if "(6) the debtor will be able to make all payments under the plan and to comply with the plan." *In re Bassett*, 413 B.R. 778, 788 (Bankr.

8

D. Mont. 2009).

The good faith requirements are found at § 1325(a)(3), which requires that "the plan has been proposed in good faith and not by any means forbidden by law;" and § 1325(a)(7) "the action of the debtor in filing the petition was in good faith."  In determining whether a petition or plan is filed in good faith the court must review the "totality of the circumstances."  *In re Khan*, 846 F.3d 1058, 1065 (9th Cir. 2017); *Leavitt v. Soto*, 171 F.3d 1219, 1224-25 (9th Cir.1999).  The Ninth Circuit did not decide with precision what qualifies as bad faith, but emphasized that the debtor's conduct must in fact be atypical.  *Rosson v. Fitzgerald (In re Rosson)*, 545 F.3d 764, 773 (9th Cir. 2008), quoting *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 127 S.Ct. 1105, 1112 at n. 11, 166 L.Ed.2d 956 (2007).

In *Leavitt*, 171 F.3d at 1224, the Ninth Circuit held that in determining whether a chapter 13 plan was proposed in good faith a bankruptcy court should consider (1) whether the debtor misrepresented facts in his or her petition or plan, unfairly manipulated the Code, or otherwise filed his or her petition or plan in an inequitable manner; (2) the debtor's history of filings and dismissals[8]; (3) whether the debtor intended to defeat state court litigation; and (4) whether egregious behavior is present.  The *Leavitt* assessment remains in use in this circuit.  *Khan*, 846 F.3d at 1065.  These four factors are not all-inclusive, and the court need not find that every factor is shown by the evidence in order to conclude that bad faith has been shown.  *Khan*, 856 F.3d at 1066.

## V.  DISCUSSION & DISPOSITION

### A.  Confirmation of Debtor's Amended Plan.

The feasibility provision at § 1325(a)(6) requires for confirmation that "the debtor will be

---

[8] This factor will not be discussed in any detail because Debtor's history of filing prior bankruptcy cases is limited to 1, and he obtained a discharge.

able to make all payments under the plan and to comply with the plan." *Bassett*, 413 B.R. at 788. Under this section priority claims must be determined and paid in full to accomplish confirmation. *Weik*, 526 B.R. at 835. Debtor's Amended Plan fails this requirement. Mona filed Proof of Claim No. 3 asserting a priority claim, as a domestic support obligation under 11 U.S.C. § 507(a)(1), in the amount of $37,926.33. To date, the Debtor has not filed an objection to allowance of Proof of Claim 3. Unless the Debtor objects, Proof of Claim 3 will be allowed under § 502(a) as a priority claim under § 507(a)(1) for a domestic support obligation in the amount of $37,926.33.

Based on the terms of Debtor's Amended Plan, the Court's decision to deny confirmation on the grounds it is not feasible is straightforward and requires only a quick review of the Amended Plan's terms. The Amended Plan provides for six monthly payments of $100 followed by 54 monthly payments of $500, for a total in plan payments of $27,600. Paragraph 2(d) provides that Mona's allowed priority domestic support obligation of $34,073.11 "shall be paid in full under this Plan …." The $27,600 in total plan payments comes up short, without taking into account payment of administrative claims or any other claims, of paying the $34,073.11 amount stated at paragraph 2(d) the Amended Plan, and falls even shorter of paying the $37,926.33 amount of Mona's Proof of Claim. Thus, Debtor's Plan is not feasible and denial of confirmation is appropriate.

**B.   Dismissal of Debtor's Chapter 13 case.**

Having considered all of the evidence, the totality of the circumstances and each of the *Leavitt* factors, this Court cannot conclude that under a totality of the circumstances Debtor has acted in bad faith and dismissal is in the best interest of creditors – but it is a very close call. The Trustee established both through the exhibits and examination of Debtor that the Debtor has

misrepresented facts throughout this case.  Debtors are required to file schedules of assets and liabilities as prescribed by the appropriate Official Forms.  Rule 1007(b)(1)(A).  These forms include instructions that begin:  "Be as complete and accurate as possible."  The importance of filing accurate schedules of assets has been described as, "fundamental because the viability of the system of voluntary bankruptcy depends upon full, candid, and complete disclosure by debtors of their financial affairs."  *In re Searles*, 317 B.R. 368 (9th Cir. BAP 2004).

To achieve the level of accuracy that is integral to the maintenance of the bankruptcy system amendments to schedules are often necessary.  Amendment of schedules by the debtor is liberally allowed pursuant to F.R.B.P. 1009(a) as a matter of course at any time before the case is closed.  *Arnold v. Gill (In re Arnold)*, 252 B.R. 778, 784 (9th Cir. 2000), (citing *Martinson v. Michael*, 17 Mont. B.R.  192, 198, 163 F.3d 526, 529 (9th Cir. 1998)).  Although this Court is inclined to give debtors the benefit of the doubt, debtors must strive to be complete and accurate. Repetitious and half-hearted attempts at completeness and accuracy are not acceptable and reflect a cavalier approach that falls short of good faith.  Here, the Court is convinced that Debtor made no effort to be as "complete and accurate" as possible.  Instead the Court has been presented with evidence that reflects a pattern of omissions and amendments that in this Court's view cannot be characterized as innocent mistakes or misunderstandings and is indicia of bad faith.

The Debtor admitted that he forgot to list a collections of coins and knives, failed to itemize his LLC's assets, and scheduled the LLC with a $0 value, despite claiming that tools he alleges are owned by the LLC had a value of $80,000, a mere 120 days before filing the petition. Debtor omitted creditors such as Bitterroot Welding and Trailwest Bank from his Schedule E/F, even though Michnevich testified that the $2,000 loan Bitterroot Welding made to Debtor to pay

11

his attorney for this personal bankruptcy case was a personal loan, and Debtor signed a personal unconditional Guaranty with Trailwest Bank.  Debtor failed to include his spouse's SNAP income on his Schedule I.  And, on Ex. 1, LBF 33, Debtor failed to list recent loan applications and his business interests in his LLC.

Debtor signed his Schedules and Statements stating under penalty of perjury that he read them and that the information was true and correct.   His Schedules were not true and correct.  Although Debtor's amendments to his Schedules remedy his prior misrepresentations and omissions to some extent, Debtor's failure to initially schedule Bitterroot Welding, and continued failure to schedule Trailwest Bank as creditors, along with the Amended Plan's failure to pay Mona's domestic support obligation in full through the Plan suggests Debtor has at best been less than candid, and at worst has tried to manipulate the Code.  This conduct is indicative of a lack of good faith by Debtor.

Debtor filed this case to defeat state court litigation.  Debtor testified that the main reason that he filed his Chapter 13 petition is that Mona had initiated contempt proceedings against him to collect her unpaid domestic support obligation, and he filed his Chapter 13 petition to avoid contempt and jail.  While this factor is not supported by the quantum of evidence supporting the first *Leavitt* factor discussed above, on balance the Court concludes that Debtor filed his petition in the instant case with the intent to defeat Mona's state court contempt proceedings.  Avoidance of state court litigation merely needs to be the "primary" motive.  *Khan*, 846 F.3d at 1066, citing *Leavitt*, 171 F.3d at 1225.   Avoiding Mona's state court contempt proceedings clearly was Bennett's primary motive in filing his Chapter 13 petition.

In reaching this conclusion this Court has considered Debtor's prepetition efforts to thwart Mona's collection efforts, including the arrangements under which Debtor claims that he owns no

12

personal property, (i.e., all household goods and furnishings, and the truck he drives is owned by his wife, and his tools are allegedly owned by his LLC), he did not have an individual bank account pre-petition and kept all his funds, including funds used to pay personal expenses in an LLC account shielded from Mona's judgment.  Given this context, this bankruptcy filing reflects part of a pattern of conduct intended to hinder Mona's collection efforts, and stymy the proceedings Mona had undertaken in state court.

The fourth and final *Leavitt* factor is whether egregious behavior is present.  In the instant case, the evidence shows that Debtor comingled his personal assets and finances with his LLC's and successfully avoided paying a domestic support obligation owed to Mona for years.  While this Court takes an extraordinarily dim view of such conduct, it is not convinced on the record before it, under the circumstances of this case, that it qualifies as egregious.  This Court found egregious behavior by the debtor *In re Chabot*, 411 B.R. 685, 703-04 (Bankr. D. Mont. 2009).  Bennett's conduct, although deeply troubling in this Court's view, does not rise to the level of egregious conduct discussed in *Chabot*.

Further and importantly, a finding of egregious conduct here, would result in a finding of bad faith and dismissal under *Leavitt*.  This Court doubts dismissal is in the best interest of creditors.  Debtor owes Mona approximately $37,926.33 for a priority domestic support obligation.  That obligation is excepted from any discharge under § 1328(a)(2) and § 523(a)(5).  If the Debtor is able to propose a chapter 13 plan which pays Mona's domestic support obligation in full over the term of the plan, as the largest individual creditor her interests are best served by permitting Debtor one final chance to confirm a plan.  A confirmed plan before this Court serves Mona's interest, as well as other creditors, far better than any alternatives available to them in state court.  As a result, on the final *Leavitt* factor the Court concludes that it is a close

call, and elects to resolve it in favor of the Debtor at this time.  Thus, although factors 1 and 3 weigh in favor of finding bad faith, factor 2 under *Leavitt* does not, and factor 4, although the Debtor's conduct is deeply troubling, the Court is reluctant to characterize it as egregious.  As a result, the Trustee's Motion to Dismiss for bad faith will be denied.

However, if there is even the slightest scintilla of conduct by Debtor that reflects anything short of complete and accurate disclosure of assets and liabilities, steadfast cooperation with any request from the Chapter 13 Trustee, and the filing of a newly amended plan that is confirmable, such conduct will tip the scales in favor of a finding that Debtor's conduct has been egregious and dismissal will be the corresponding result and the record in the instant proceeding will be part of the record in any subsequent proceeding requesting dismissal. [9]

**IT IS ORDERED** a separate Order will be entered in conformity with the above, sustaining the Chapter 13 Trustee's objections to confirmation and denying confirmation of Debtor's 1st Amended Chapter 13 Plan; the Debtor will be granted a final opportunity to amend his Schedules and propose a further amended Plan which satisfies the confirmation requirements of § 1325; and, the Chapter 13 Trustee's request to dismiss the case for bad faith will be denied without prejudice, with leave to refile should Debtor not fulfill his obligations or otherwise demonstrate the slightest indicia of bad faith.

Honorable Benjamin P. Hursh
U.S. Bankruptcy Judge

---

[9] Any future dismissal may be "with prejudice" depending on Debtor's future conduct.